JOHN MEYERS, Respondent, v. ALEXANDER BOYD et al.; WILLIAM BOYD, Appellant.

### St. Louis Court of Appeals, April 7, 1891.

Partnership: SUFFICIENCY OF THE EVIDENCE. The evidence in this cause is considered, and is *held* sufficient to warrant a finding, that the defendant was liable for the debt in controversy as a member of a partnership, whose existence was in dispute.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*Frank, Dawson & Garvin*, for appellant.

*D. Castleman Webb*, for respondent.

THOMPSON, J.—This action was brought before a justice of the peace against Alexander Boyd and William Boyd on an account made out against the firm of "Boyd Bros." Alexander Boyd died pending the action, and the suit was revived against his administrator, and the cause proceeded to judgment against both defendants. From the judgment William Boyd prosecutes this appeal, and assigns for error that there

was no evidence tending to show that he was a partner with his brother, Alexander Boyd. Whether there was such evidence, is the only question in the case.

The evidence tended to show that, for many years prior to the contracting of the items of debt included in the account sued on, the defendant William Boyd was the business manager of his brother, Alexander Boyd, and that, during a considerable portion of this time, Alexander Boyd was sick and unable personally to attend to the business. The evidence adduced by the plaintiff tended to show that, for a long time, when William Boyd was thus managing the business, the plaintiff made out bills against the supposed firm in the name of "Boyd Bros.," and that these bills were habitually paid without objection to the manner in which they were made out. The plaintiff also testified that he remembered that, at one time, William Boyd was working for his brother, Alexander Boyd, at $100 a month, conducting his brother's business. The plaintiff continued his testimony (with interruptions) somewhat in this way: "It seems the business was not going right, and William Boyd quit his brother for a certain time, and the brother was not able to run the business." At this point the witness was interrupted, but continued as follows: "I had conversations with William Boyd, when he came back. He told me he had come back again, and that he thought he would be able to run things in a different way. He told me at the shop door—he says: 'I am going to run it my own way now; in fact, *he has given me one-half of everything to do it.*'" The plaintiff did not remember at what precise time he commenced making out the bills in the name of "Boyd Bros." Nobody told him to make them out that way; but he made them out that way and sent them in, and they were always paid up to the present bill. The plaintiff's son testified that he called at the house of William Boyd, after sending a collector to him many times, and spoke to him about

the payment of the bill which is the subject of this suit; and that William Boyd said, "Yes, *we* owe," or, "I owe it; but I have not got the money to pay you the bill,—I will give you a note." This note was a past due note, made by some one in Chicago and payable to William Boyd. William Boyd wanted to give that to the plaintiff in payment. The witness continued: "He said, 'I know I owe you this money; I have not got the money to pay you.'" The bill which was thus presented, and of which the defendant spoke, was made out against "Boyd Bros." The same witness testified that he had made out bills for his father against "Boyd Bros." for some eight years, and had sent them to the house of William Boyd, and they had always been paid without objection.

We are of opinion that this evidence, taken together, was sufficient to take to the jury the question, whether the defendant was a partner of his brother Alexander Boyd; and we accordingly overrule this assignment of error, and affirm the judgment. It is so ordered. All the judges concur.